UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA        CRIMINAL NO. 04-50083-01
                                          (CV 05-0886-P)
versus                                 JUDGE STAGG

JOHN MICHAEL McCONNELL        MAGISTRATE JUDGE HORNSBY

_____

## REPORT AND RECOMMENDATION

**Introduction**

John Michael McConnell ("Defendant") pleaded guilty to a violation of 18 U.S.C. § 656 (theft, embezzlement or misapplication by bank officer or employee).  The USPO calculated a guidelines range of 30 to 37 months imprisonment. Judge Stagg sentenced Defendant to serve 30 months in prison and five years of supervised release.  Defendant was also ordered to pay restitution to AmSouth Bank in the amount of $201,157.31.  Defendant, who was represented by retained counsel J. Ransdell Keene, did not appeal.

Defendant later filed a pro se Section 2255 motion that complained his sentence was imposed in violation of the principles announced in Blakely and Booker.  Defendant also alleged that he directed Mr. Keene to file a direct appeal, but counsel refused to do so because he believed there was nothing to appeal.  The Government's response to the motion includes an affidavit from Mr. Keene in which he testified that he told Defendant he saw no basis for appeal, given a sentence at the lowest end of the guidelines range.  He added that he told Defendant that he forecast a change coming from the Supreme Court in light of the

recent <u>Blakely</u> decision and that Defendant could later attempt to take advantage of any such changes via a Section 2255 motion. He further testified that Defendant never instructed him to file a notice of appeal.

The sole issue before the court is whether Defendant is entitled to an out-of-time appeal. In the past, the Government has avoided the expense and delay associated with evidentiary hearings on this issue by consenting to an out-of-time appeal when the facts were in conflict. Upon referral of this matter by Judge Stagg to the undersigned (Doc. 22), the undersigned's law clerk contacted the Government and requested its consent to an out-of-time appeal. The Government declined to consent, and the matter was set for an evidentiary hearing. Consequently, CJA-funded counsel was appointed to represent Defendant as required by Rule 8(c) of the Rules Governing Section 2255 Proceedings. The U.S. Marshal transported Defendant from a Texarkana prison camp and detained him in a Shreveport jail to permit his attendance at the hearing.

The hearing was held on March 8, 2006. Both Defendant and his former attorney, Mr. Keene, testified at the hearing. For the reasons that follow, it is recommended that Defendant be granted relief in the form of a direct appeal.

## <u>Roe</u>: An Overview

The governing law is set forth in <u>Roe v. Flores-Ortega</u>, 120 S.Ct. 1029 (2000). The petitioner in <u>Roe</u> pleaded guilty to second degree murder and was sentenced to fifteen years to life in state prison. The trial judge told him he could file an appeal within 60 days from

the date of sentence and that, if he could not afford counsel, counsel would be appointed to represent him on appeal. The public defender wrote "bring appeal papers" in her file, but no notice of appeal was filed within the permitted time. Petitioner subsequently tried to file a notice of appeal, but the clerk rejected the notice as untimely. Petitioner then sought habeas relief, and the case proceeded to the Supreme Court.

The Court judged the claim under the familiar test of <u>Strickland v. Washington</u>, 104 S.Ct. 2052 (1984), which holds that defendants have a Sixth Amendment right to reasonably effective legal assistance. A defendant claiming ineffective assistance must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defendant.

In the context of whether counsel must file an appeal, the Court first held that a lawyer who disregards specific instructions from his client to file a notice of appeal acts in a manner that is professionally unreasonable. <u>Roe</u>, 120 S.Ct. at 1035. At the other end of the spectrum, a petitioner cannot complain of ineffective assistance if he explicitly tells his attorney not to file an appeal and the attorney follows those instructions. <u>Id</u>.

The more difficult question is that presented in <u>Roe</u> (and, as the evidence will show, in this case): Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other? The first inquiry in such a case is to ask "whether counsel in fact consulted with the defendant about an appeal." <u>Roe</u>, 120 S.Ct. at 1035. "Consult" was said to mean advising the defendant about the advantages and

disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. <u>Id</u>.

**No Timely Consultation**

A review of some of the testimony from the hearing is necessary to explain the undersigned's finding that counsel did not, within the meaning of <u>Roe</u>, consult with Defendant about an appeal. Both Defendant and Mr. Keene testified at the hearing that Defendant expressed disagreement with the presentence report's suggestion of the amount of money at issue and that his guidelines sentence would be calculated based on the amount he intended to steal ("intended loss") rather than the amount he actually succeeded in stealing from the bank ("actual loss"). Judge Stagg nonetheless imposed a sentence within the suggested guidelines range. Following sentencing, Defendant was permitted to remain free on bond for about 30 days before reporting to prison.

Defendant testified that he did not anticipate a sentence of 30 months and that he was shell-shocked and emotional after the sentencing. In that state, he was directed to the U. S. Marshal's office for the usual processing that was required before he could leave the court house. Defendant testified that he met briefly with Mr. Keene outside the Marshal's office, expressed that he was upset at how the loss was calculated (which Defendant says added two points to his guidelines calculation and increased the amount of restitution he owed). Defendant admits he never expressly told Mr. Keene to appeal or used the word "appeal," but he said that he told Mr. Keene he wanted to "get something done" about the errors he

perceived had been committed in connection with the sentencing.[1]  He also testified that he never told Mr. Keene not to appeal.  Defendant admitted that Mr. Keene told him his guidelines sentence was at the lower end of the range and, in Mr. Keene's opinion, not much, if anything, could be done.  Defendant testified that he nonetheless expressed dissatisfaction with the sentence, especially the loss calculation.

Mr. Keene testified that he had no recollection of a meeting outside the Marshal's office, but he said it would not be out of the ordinary for him to accompany a client to the processing.  Defendant, who had a specific recollection of the meeting, testified that he did not speak to Mr. Keene again after the meeting, and he had no written or other communication with Mr. Keene's office within the ten day period for filing an appeal.  He said he wrote to Mr. Keene a few months later about his issues and to find out what was being done.  Mr. Keene responded by letter that Defendant could pursue relief by a Section 2255 motion.

Mr. Keene testified that he told Defendant before sentencing the range within which the sentence would likely fall, but no appeal was discussed.  He also did not recall a discussion regarding an appeal after sentencing, but he said that if Defendant had asked for

---

[1] Defendant wrote at page 7 of his memorandum in support of his motion that he "directed his Attorney to 'Notice' the case for direct appeal."  He admitted at the hearing that he never used those exact words.  He said he was merely trying to use the proper "legal language" in his motion.

an appeal, he would have filed the notice of appeal and directed Defendant to seek appointed counsel.

Mr. Keene's affidavit states that "after sentencing" Defendant asked if he had a basis for appeal and Mr. Keene told him that he did not because his sentence was at the low end of the guidelines range and the guidelines were the law of the land. The affidavit does not state whether this post-sentencing communication took place within the time to appeal or whether it was oral or written, and Mr. Keene's testimony at the hearing did not clarify when the communication took place. The communication must have been after the time to appeal because Mr. Keene was asked by the court at the hearing: "At any time prior to the expiration of the appeal delay for Mr. McConnell, did you consult with Mr. McConnell about filing an appeal?" His answer was: "No." Mr. Keene added that he did receive correspondence from Defendant more than 40 days later, but the letter did not refer to an appeal.

Mr. Keene testified that at some time, apparently not within the ten day period for filing an appeal, he discussed with Defendant the likelihood of a change in the law with respect to the sentencing guidelines. The Blakely decision issued about a week after Defendant pleaded guilty. The Fifth Circuit ruled a few weeks later in Pineiro that Blakely did not invalidate the federal sentencing guidelines system. The Supreme Court granted *certiorari* on August 2, 2004 in the Booker and Fanfan cases. Defendant was sentenced on October 28, 2004, and the Booker/Fanfan decision issued several weeks later on January 12, 2005. Accordingly, the law was quite uncertain regarding the fate of the guidelines at the

time of Defendant's sentencing and during the delay for filing an appeal. Mr. Keene testified that he advised Defendant he might be able to seek Section 2255 relief if the Supreme Court were to rule in a way that was favorable to him. As it turned out, however, <u>Booker/Fanfan</u> is not retroactively applicable to cases on Section 2255 review. <u>U. S. v. Gentry</u>, 432 F.3d 600 (5th Cir. 2005).

After considering all of the evidence and relevant circumstances, the undersigned finds that counsel did not consult with Defendant about an appeal, within the time period in which it would have mattered, by advising Defendant about the advantages and disadvantages of appeal and making a reasonable effort to discover Defendant's wishes. There is no persuasive evidence of a timely consultation, and Mr. Keene specifically denied that there was one.[2]

**Obligation to Consult**

<u>Roe</u> states that if counsel has not consulted with the defendant, the next question is whether counsel's failure to consult with the defendant itself constitutes deficient performance. In other words, when does counsel have an obligation to consult with his client about an appeal? The Court stated that the better practice is for counsel routinely to consult, but the Court could not as a constitutional matter hold that a failure to consult was

---

[2] Defendant testified that Mr. Keene told him during the meeting outside the Marshal's office that there was not much that could be done, but that alone is not adequate to demonstrate that there was a meaningful consultation within the definition provided in <u>Roe</u>. To the extent those remarks could be considered a consultation, the evidence shows that the client afterwards indicated a desire to appeal, an issue that will be discussed below in more detail. If the client wishes to appeal, the lawyer must do so.

necessarily unreasonable in every case. The Court posed the following example: a defendant consults with counsel, counsel advises that a guilty plea probably will lead to a two year sentence, the defendant expresses satisfaction and pleads guilty, the court sentences the defendant to two years as expected, the court informs the defendant of his appeal rights, and he does not express any interest in appealing. If counsel in that case concludes there are no non-frivolous grounds for appeal, he is likely not, said the Court, acting unreasonably if he does not consult regarding an appeal. Another example provided by the Court is when a sentencing court's instructions about appeal rights in a particular case are "so clear and informative as to substitute for counsel's duty to consult." <u>Roe</u>, 120 S.Ct. at 1036.

This case is not square with either of those examples. Judge Stagg's remarks at sentencing mentioned a right to appeal but did not include any particular elaboration and did not mention the deadline for filing a notice of appeal. Defendant did plead guilty, which is a "highly relevant factor," <u>Roe</u>, 120 S.Ct. at 1036, but he testified convincingly that he was not happy with the sentence or the calculations underlying it. Mr. Keene's testimony and the objections he filed to the presentence report lend support to Defendant's assertion that he expressed dissatisfaction with at least some sentencing issues.

Pursuant to <u>Roe</u>, the court determines whether counsel had a duty to consult by examining whether there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), *or* (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. 120 S.Ct. at 1036. The inquiry must examine all relevant factors in a given case, but the

Supreme Court expected that courts would find "in the vast majority of cases" that counsel had a duty to consult about an appeal. Id. at 1037.

The court finds credible Defendant's testimony that he met with Mr. Keene outside the Marshal's office after the sentencing, expressed dissatisfaction with the sentence, and "kept telling [Mr. Keene] that I wanted to do something to get that reversed or whatever I needed to get done." There was no evidence denying such a meeting, and Mr. Keene could not recall whether or not the meeting took place. Under the circumstances, the undersigned finds that this particular defendant reasonably demonstrated that he was interested in appealing. He did not use the word appeal, but he was not required to use proper legal terminology to trigger a duty to consult regarding an appeal.

The Government filed a supplemental memorandum (Doc. 30) after the hearing and urged that a rational defendant would not have desired an appeal because (1) courts have held that lawyers were not ineffective for failing to anticipate Blakely and Booker and (2) the loss calculation issue would not have been viable on appeal. Those points are debatable, but in the end need not be resolved. When a defendant reasonably demonstrates a desire to appeal, a duty to consult on the wisdom of the appeal arises whether or not the reason expressed by the defendant for the appeal has merit.

**Prejudice**

The second component of the Strickland test requires Defendant to show prejudice. Roe explains that Defendant need not show that he would have prevailed on appeal, and even an inability to specify the points he would raise were his right to appeal reinstated will not

foreclose the possibility that he can show prejudice. Rather, to show prejudice in a case such as this, a defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Roe, 120 S.Ct. at 1038-40. Evidence of a non-frivolous ground for appeal or that the defendant promptly expressed a desire to appeal will often be highly relevant. Id. at 1039.

Defendant testified that had Mr. Keene told him about his appeal rights, he "definitely" would have wanted to appeal. The loss calculation issues that Defendant would apparently desire to pursue on appeal were rejected by Judge Stagg, and Mr. Keene testified that he agreed with the court's resolution. There may or may not, therefore, be non-frivolous ground for appeal in that area. Had Defendant been fully advised about the potential for the then-pending Booker/Fanfan cases to relieve him of the mandatory effect of the guidelines, he may have wished to pursue an appeal simply to preserve that potential error. Judge Stagg commented at the sentencing that he was bound by the guidelines and that if he imposed a lesser sentence the prosecutor would report him to the Attorney General, who would report him to the chairmen of the House and Senate judiciary committees for acting without legal authority. See Sentencing Transcript, p. 11. A reasonable defendant, under those circumstances, would wish to preserve every opportunity to be free of the guidelines and perhaps receive a lesser sentence if the sentencing judge were not so bound. It was, of course, unpredictable at that time what the Supreme Court would ultimately decide but, as Mr. Keene testified, everyone was talking at the time about a likely change in the law. Based

on all of circumstances presented in this case, the undersigned finds that Defendant has established prejudice, *i.e.*, he would have requested an appeal had he received a timely and effective consultation about appeal rights.

**Relief**

Defendant's Section 2255 motion included, in addition to the Roe claim, a claim based on Booker/Fanfan and related jurisprudence. When a Section 2255 motion joins a claim for an out-of-time appeal with other claims, the district court may permit the appeal to proceed and hold in abeyance or dismiss without prejudice the other claims, pending the outcome of the appeal. U. S. v. Orozco-Ramirez, 211 F.3d 862, 871 n. 15 (5th Cir. 2000). Defendant's counsel agreed in his closing argument to the use of that procedure in this case if relief were granted on the Roe claim. Defendant could then pursue the other claims on direct appeal.

In U. S. v. West, 240 F.3d 456 (5th Cir. 2001), the Fifth Circuit described the remedy of permitting an out-of-time appeal and the procedural steps that must be taken to permit appellate jurisdiction over the appeal. The Court instructed the district judge to reinstate the underlying criminal judgment on the criminal docket. Thereafter, the time for appeal is the 10 days permitted by F.R.A.P. 4(b)(1)(A).

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motion to Vacate (Doc. 15) be resolved by **granting** Defendant the remedy of an out-of-time direct appeal. All other claims for relief presented in the motion should be **dismissed without prejudice, pending the outcome of the appeal**. To permit the appeal to proceed, the court should reinstate on the criminal

docket Defendant's underlying criminal judgment that is found at Doc. 10, originally entered on October 31, 2004.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 14th day of March, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE